IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MYRA MARTINELLI,<br><br>       Plaintiff,<br><br>   v.<br><br>MICHAEL ASTRUE,<br>Commissioner of Social Security,<br><br>       Defendant.<br>_____/ | No. C 06-5845 CW<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT AND REMAND |

   Plaintiff Myra Martinelli moves for summary judgment or, in the alternative, for remand.  Defendant Michael Astrue[1], in his capacity as Commissioner of the Social Security Administration (SSA), opposes the motion and cross-moves for summary judgment.[2]  Having considered all of the papers filed by the parties, the Court GRANTS Defendant's motion for summary judgment and DENIES Plaintiff's motions for summary judgment and remand.

---

   [1]On February 12, 2007, Michael J. Astrue replaced Jo Anne B. Barnhardt as the Commissioner of Social Security.  Accordingly, he is substituted as the defendant in this action pursuant to Federal Rule of Civil Procedure 25(d)(1).

   [2]Plaintiff has not filed a reply.

BACKGROUND

I.  Procedural History

On July 30, 2004, Plaintiff filed an application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act alleging disability beginning on June 16, 2004. (Transcript 107-109.)  The application was denied initially and on reconsideration.  (Tr. 74, 83.)  On March 27, 2006, after a hearing, the Administrative Law Judge (ALJ) issued a decision finding Plaintiff was not disabled.  (Tr. 11-17.)  This became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.  (Tr. 4-6.)  Plaintiff then sought judicial review pursuant to 42 U.S.C. § 405(g).

II.  Factual History

A.  Educational and Work History

Plaintiff was born in 1982.  (Tr. 12.)  She was twenty-two years old at the onset of her alleged disability.  (Tr. 12.)  She completed the eighth grade and, at the time of the hearing, was enrolled in classes to obtain a GED.  (Tr. 12.)  In the six months prior to the hearing, Plaintiff worked part-time, on-call as a security guard.  (Tr. 12.)  For two to three weeks, Plaintiff was a contract worker at the United States Post Office.  (Tr. 12.) Plaintiff has also worked as a store clerk, a bus-person and a waitress.  At the time of the hearing, Plaintiff worked at her mother's mail business about nine hours per week.  (Tr. 12, 131.)

B.  Medical History

On December 2, 1996, a school psychologist, Marsha Thibodeaux, conducted a Psycho/Educational Case Study of Plaintiff.  (Tr. 177.)

2

Ms. Thibodeaux noted that Plaintiff reported that she felt depressed approximately two times per week. (Tr. 178.) Ms. Thibodeaux administered the Wechsler Intelligence Scale for Children III (WISC-III) test. (Tr. 177.) She noted that Plaintiff's below average test scores on the WISC-III could not "be considered a true measure of her cognitive abilities due to her state of apparent depression . . . ." (Tr. 178.)

In a letter to Ms. Thibodeaux dated January 13, 1997, Dr. Nathan H. Thuma, M.D., of the Silverado Psychiatric Center, corroborated Plaintiff's reports of depression. After seeing Plaintiff twice, Dr. Thuma diagnosed Plaintiff as suffering from a "malignant combination of depression, oppositional defiance disorder, and low IQ" and prescribed Prozac[3]. (Tr. 181.) Plaintiff's mother reported that the Prozac helped considerably. (Tr. 181.)

In May, 2001, Plaintiff saw Dr. Daniel Bouwmeister, M.D. (Tr. 251.) Dr. Bouwmeister diagnosed Plaintiff with depression and prescribed Celexa and Wellbutrin.[4] (Tr. 251.)

From April to August, 2004, Plaintiff was treated at the Mendocino Community Health Clinic. The clinic diagnosed Plaintiff with depression and obsessive compulsive disorder (OCD) and

---

[3] Prozac is indicated for the treatment of major depressive disorder and obsessive compulsive disorder. Physicians' Desk Reference 4600-3430 (2007).

[4] Celexa is indicated for the treatment of depression. Physicians' Desk Reference 3060-0140 (2007). Wellbutrin is indicated for the treatment of major depressive disorder. Id. at 3270-4625.

3

prescribed Lexapro, Valium and Wellbutrin.[5] (Tr. 208-212.) Plaintiff's mother reported that Plaintiff was less obsessive when she was treated with a double dose of Lexapro. (Tr. 208.)

Between April and August, 2004, Plaintiff saw Dr. Bouwmeister again. (Tr. 251.) Dr. Bouwmeister described Plaintiff as "quite functionless and unpredictable relative to day to day responsibilities." Dr. Bouwmeister prescribed Lexapro to help Plaintiff's depression and OCD and transferred her care to a nurse practitioner. (Tr. 251.)

On October 18, 2004, as a referral from the Social Security Administration, Plaintiff was examined by psychologist Albert Kastl, Ph.D. (Tr. 213-316.) Dr. Kastl administered a variety of tests to evaluate Plaintiff's cognitive ability, memory skills and visual-motor functions, including the Bender Visual Motor Gestalt Test, the Trail Making Test, the Wechsler Adult Intelligence Scale - III, and the Wechsler Memory Scale - III. (Tr. 213.) Dr. Kastl reported that Plaintiff suffered from a learning disorder and mild anxiety, for which she was taking Xanax[6], Valium and Lexapro. (Tr. 215-216.) He found no signs of other mental problems such as "gross mental confusion, loss of lines of thought, or profound depression." (Tr. 215.)

On January 10, 2005, Plaintiff was treated at the Lucerne

---

[5] Lexapro is indicated for the treatment of major depressive disorder. Physicians' Desk Reference 3060-0371 (2007). Valium is indicated for the management of anxiety disorders. Id. at 6920-2950.

[6] Xanax is indicated for, among other things, the management of anxiety disorder. Physicians' Desk Reference WL 24114482 (2003).

Community Clinic. (Tr. 222.)  She reported trying multiple medications for depression and anxiety.  (Tr. 224.)  Plaintiff was diagnosed with paranoia, possible attention deficit disorder and panic attacks.  (Tr. 223.)  The clinic prescribed Seroquel.[7]  (Tr. 224.)

In a letter dated July 23, 2005, Dr. Bouwmeister described Plaintiff's condition as "quite debilitating relative to ordinary matters of work, relationships and like responsibilities."  (Tr. 251.)

C.  Disability Report

On Plaintiff's disability report, she indicated that she was independent in self-care, could do the laundry, run the dogs and do yard work once or twice a week without help or encouragement.  (Tr. 123-124.)  Plaintiff further indicated that she was able to work on her truck, to drive, shop, and ride a dirt bike, and that she played pool on a regular basis.  (Tr. 125-126.)  Plaintiff also indicated that she had difficulty completing tasks, getting along with others, dealing with authority and handling stress.  (Tr. 127-128.)

Plaintiff's mother declared that Plaintiff was obsessed with her appearance.  (Tr. 139.)  She listed Plaintiff's hobbies as listening to music, watching movies, swimming and wood carving.  (Tr. 142.)  She stated that Plaintiff helped out in her mail business.  (Tr. 145)  She explained that Plaintiff was able to

---

[7]Seroquel is indicated for the treatment of acute manic episodes associated with bipolar I disorder. Physicians' Desk Reference 0402-1380 (2007).

5

learn the business step-by-step, because she learned better when the pressure of school was removed. (Tr. 145.)

D. Hearing Testimony

At the time of her hearing, Plaintiff was twenty-four years of age. Plaintiff was represented by her mother Madelyn Martinelli, a non-attorney. Plaintiff testified that she attended GED classes, talked to her friends on the phone and worked as an on-call security guard at a local concert venue. (Tr. 28, 29, 37.) She stated that her anxiety and panic disorder induced her depression. (Tr. 42, 45.) Plaintiff explained that she never had to leave work because of a panic attack and that her anxiety was reduced by medication. (Tr. 45-46.)

III. Administrative Law Judge's Decision

In his decision denying Plaintiff's claim, the ALJ applied the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 16, 2004. (Tr. 12.)

At step two, the ALJ found that Plaintiff suffered from a learning disability and an anxiety disorder that were severe in combination. (Tr. 12.) However, the ALJ found that Plaintiff's complaints of depression and OCD were "without abnormal clinical signs and symptom cluster to establish the disorders." (Tr. 15.)

At step three, the ALJ found that none of Plaintiff's impairments either individually or in combination met or equaled in severity and duration the criteria of any listed impairment. (Tr. 12.)

At step four, the ALJ found that Plaintiff had no relevant past work experience because her reported work activities were not consistent with gainful employment. (Tr. 15.) He found Plaintiff's physical capacity for work to be unlimited. (Tr. 12.) The ALJ noted that Plaintiff's status as a younger individual indicated that she was not expected to have difficulty adjusting to other work and concluded that there would be no issue with respect to transferrable skills. (Tr. 15.) The ALJ found that Plaintiff's intermittent need for medical care supported a finding that she is better suited for work that does not involve high quotas or production expectations. (Tr. 14.)

At step five, the ALJ relied on the Vocational Expert's testimony to find that Plaintiff retained the ability to perform the job of automotive detailer, with 69,000 jobs in the national economy and 4,700 jobs in the local economy. Therefore, the ALJ concluded that Plaintiff was not disabled.

LEGAL STANDARD

I. Overturning a Denial of Benefits

A court cannot set aside a denial of benefits unless the ALJ's findings are based upon legal error or are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Orteza v. Shalala, 50 F. 3d 748, 749 (9th Cir. 1995). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

7

1    To determine whether substantial evidence exists to support
2 the ALJ's decision, a court reviews the record as a whole, not just
3 the evidence supporting the decision of the ALJ.  <u>Walker v.</u>
4 <u>Matthews</u>, 546 F.2d 814, 818 (9th Cir. 1976).  A court may not
5 affirm the ALJ's decision simply by isolating a specific quantum of
6 supporting evidence.  <u>Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th Cir.
7 1989).  In short, a court must weigh the evidence that supports the
8 ALJ's conclusions and that which does not.  <u>Martinez v. Heckler</u>,
9 807 F.2d 771, 772 (9th Cir. 1986).

10   If there is substantial evidence to support the decision of
11 the ALJ, it is well-settled that the decision must be upheld even
12 when there is evidence on the other side, <u>Hall v. Sec'y of Health,</u>
13 <u>Educ. & Welfare</u>, 602 F.2d 1372, 1374 (9th Cir. 1979), or when the
14 evidence is susceptible to more than one rational interpretation,
15 <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1453 (9th Cir. 1984).  If
16 supported by substantial evidence, the findings of the ALJ as to
17 any fact will be conclusive.  42 U.S.C. § 405(g); <u>Vidal v. Harris</u>,
18 637 F.2d 710, 712 (9th Cir. 1981).
19 II.  Establishing Disability Under the Social Security Act
20   To determine whether a plaintiff is disabled within the
21 meaning of the Social Security Act, the Social Security Regulations
22 set out a five-step sequential process.  <u>Reddick v. Chater</u>, 157
23 F.3d 715, 721 (9th Cir. 1998); 20 C.F.R. § 416.920.  The burden of
24 proof is on the plaintiff in steps one through four.  <u>Sanchez v.</u>
25 <u>Sec'y of Health & Human Servs.</u>, 812 F.2d 509, 511 (9th Cir. 1987).
26 In step one, the claimant must show that she or he is not currently
27 engaged in substantial gainful activity.  20 C.F.R. § 416.920(b).
28

In step two, the claimant must show that he or she has a "medically severe impairment or combination of impairments" that significantly limit his or her ability to work. Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. § 416.920(c). If the claimant does not, he or she is not disabled. Otherwise, the process continues to step three for a determination of whether the impairment meets or equals a "listed" impairment which the regulations acknowledge to be so severe as to preclude substantial gainful activity. Yuckert v. Bowen, 482 U.S. 137, 141 (1987); 20 C.F.R. § 416.920(d). If this requirement is met, the claimant is conclusively presumed disabled; if not, the evaluation proceeds to step four. At step four, it must be determined whether the claimant can still perform "past relevant work." Yuckert, 482 U.S. at 141; 20 C.F.R. § 416.920(e). If the claimant can perform such work, he or she is not disabled. If the claimant meets the burden of establishing an inability to perform prior work, the burden of proof shifts to the Commissioner for step five. At step five, the Commissioner must show that the claimant can perform other substantial gainful work that exists in the national economy. Yuckert, 482 U.S. at 141; 20 C.F.R. § 416.920(f).

                              DISCUSSION

I. Dr. Bouwmeister's and Dr. Kastl's Opinions

    Plaintiff contends that the ALJ erred in granting more weight to examining-psychologist Dr. Kastl's opinion than to treating-physician Dr. Bouwmeister's opinion.

    The ALJ must give more weight to the opinions of treating medical sources than to either examining or non-examining medical

9

sources because treating sources usually provide "a detailed, longitudinal picture" of a claimant's medical impairments. 20 C.F.R. § 404.1527(d)(2); Rodriquez v. Bowen, 876 F.2d 759, 761 (9th Cir. 1989). Treating source means the claimant's physician, psychologist, or other acceptable medical source who provides, or has provided, the claimant with medical treatment or evaluation and who has, or who has had, an ongoing treatment relationship with the claimant. 20 C.F.R. § 404.1502. In order to reject the uncontradicted opinion of a treating source, the ALJ must set forth clear and convincing reasons for doing so. Baxter v. Sullivan, 923 F.2d 1391 (9th Cir. 1991). Where there are contradictions between the opinion of the treating source and others, the ALJ must detail specific and legitimate reasons supported by substantial evidence to reject the opinion of the treating source. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

The ALJ gave two reasons for giving Dr. Bouwmeister's opinion minimal weight. First, the ALJ noted that Dr. Bouwmeister had only treated Plaintiff for five months. (Tr. 12.) A five month period may not be sufficient to provide a "a detailed, longitudinal picture" of a plaintiff's medical impairments. 20 C.F.R. § 404.1502. Second, the ALJ pointed out that Dr. Bouwmeister's conclusion that Plaintiff suffered from debilitating emotional symptoms was contradicted by the large number of Plaintiff's reported daily activities and the absence of ongoing medical attention.

Because the ALJ detailed specific and legitimate reasons for giving minimal weight to Dr. Bouwmeister's opinion, his

10

determination was not error. <u>Lester</u>, 81 F.3d at 830.

## II. The ALJ's Step Two Determination

Plaintiff argues that, at step two of the sequential process, the ALJ improperly excluded Plaintiff's depressive disorder and OCD as medically determinable severe impairments.

At step two of the five-step sequential inquiry, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments, defined as "significantly limit[ing] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a). Basic work activities include: "[u]nderstanding, carrying out, and remembering simple instructions" and "[r]esponding appropriately to supervision, co-workers and usual work situations . . . ." 20 C.F.R. § 416.921(b)(3),(5).

The step two severity determination is intended to identify those claimants whose impairments are so slight that they are unlikely to be found disabled even when the variables of their age, education and experience are taken into account. <u>Carrao v. Shalala</u>, 20 F.3d 943, 949 (9th Cir. 1994)(citing <u>Yuckert</u>, 482 U.S. at 153).

Here, the ALJ ruled in Plaintiff's favor at step two, finding that she suffered from learning and anxiety disorders that were severe in combination. (Tr. 12.) Any error in the way he reached this favorable determination is moot. As to step three, Plaintiff does not argue that her condition, even considering depression and OCD, met or exceeded a listed impairment. The ALJ again found in favor of Plaintiff at step four, that she had no past relevant

11

work.  Thus, any error on the ALJ's part in properly evaluating Plaintiff's depression and OCD affected only his determination at step five that she was not disabled.

A plaintiff bears the initial burden of establishing disability.  See Sanchez v. Sec'y of Health and Human Servs., 812 F.2d 509, 511 (9th Cir. 1987).  Symptoms alone "are not enough to establish that there is a physical or mental impairment . . . ." 20 C.F.R. § 404.1528.  The impairment "must be shown by medically acceptable clinical diagnostic techniques . . . ." Id.  Moreover, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.  Warre v. Comm'r of the SSA, 439 F.3d 1001, 1006 (9th Cir. 2006).

The ALJ determined that Plaintiff's learning disability and anxiety were not disabling and that depression and OCD were not adequately medically established.  This determination is supported by substantial evidence.  As previously discussed, the ALJ properly relied on the opinion of examining psychologist Dr. Kastl in assessing Plaintiff's impairments.  (Tr. 13.)  After conducting a variety of tests, Dr. Kastl diagnosed Plaintiff with anxiety and learning disorders, but stated that Plaintiff showed no signs of profound depression.  (Tr. 215.)  Dr. Kastl made no mention of OCD.

Plaintiff's work history demonstrates that, despite her depression and OCD, she was able to understand, carry out, and remember simple instructions and respond appropriately to supervision, co-workers and usual work situations.  See 20 C.F.R. § 416.921(b)(3),(5).

12

Furthermore, Plaintiff's depression and OCD improved with treatment. <u>Warre</u>, 439 F.3d at 1006. Dr. Bouwmeister, Plaintiff's mother and Plaintiff reported that her condition improved in response to prescribed medication. (Tr. 251, 181, 45-46.)

Finally, the ALJ did not err in finding that Plaintiff did not provide acceptable medical evidence to prove her depression and OCD. <u>Sanchez</u>, 812 F.2d at 511. The record shows that Plaintiff has been diagnosed and treated for depression and OCD several times. However, these diagnoses were based on Plaintiff's reported symptoms rather than clinical diagnostic techniques. 20 C.F.R. § 404.1528.

Because it was supported by substantial evidence, the ALJ's determination was not error.

III. Failure to Develop the Record Fully

Plaintiff argues that the ALJ failed to develop the record fully by not adequately exploring the subjects and concerns raised by her mother at the hearing.

Because disability hearings are not adversarial in nature, the ALJ has a special duty in social security cases fully and fairly to develop the record in order to make an informed decision on a claimant's entitlement to disability benefits. <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 849 (9th Cir. 1991). The ALJ's responsibility to develop relevant evidence takes on heightened significance when the claimant is mentally impaired. <u>Deblois v. Secretary of Health & Human Services</u>, 686 F.2d 76, 81 (1st Cir. 1982); <u>DeLorme</u>, 924 F.2d at 849. In such instances, the ALJ must be "especially diligent in ensuring that favorable as well as

13

unfavorable facts and circumstances are elicited [at the hearing]." Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978).

The ALJ's duty to develop a full and fair record exists even when the claimant is represented by counsel. Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983); Padilla v. Heckler, 643 F. Supp. 481, 487 (S.D.N.Y. 1986). When a claimant is not represented by counsel, however, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" in order to afford the pro se litigant an impartial decision based upon an adequately developed record. Thompson v. Schweiker, 665 F.2d 936, 940 (9th Cir. 1982) (quoting Gold v. Secretary of HEW, 463 F.2d 38, 43 (2nd Cir. 1972).

Although Plaintiff's mother did not testify as a witness, the ALJ did fully elicit her views in her capacity as Plaintiff's representative. (Tr. 20.) At the outset of the hearing, the ALJ gave Plaintiff's mother a chance to make an opening statement, during which she extensively detailed Plaintiff's mental health history. (Tr. 23-27.) At the conclusion of her opening statement, the ALJ asked her if she had anything more to say. (Tr. 26.)

Plaintiff claims that the ALJ was restrictive with her mother. At various points throughout the hearing when the ALJ asked Plaintiff a question, Plaintiff's mother tried to interject her own views regarding Plaintiff's mental health. (Tr. 23.) At these times, the ALJ prevented Plaintiff's mother from interjecting her own views and asked her to permit Plaintiff herself to answer the questions. (Tr. 35, 37, 38.)

Plaintiff claims that if the ALJ had pursued the mother's

14

testimony more fully, she could have served as an important source of information regarding Plaintiff's mental health condition, treatment, and functional abilities. However, Plaintiff's mother had already documented these issues when she filled out Plaintiff's disability report form and in her opening statement. (Tr. 24-27, 111-37.)

IV. Plaintiff's Credibility

Plaintiff contends that the ALJ failed to apply the proper credibility analysis to her subjective symptom testimony.

In Cotton v. Bowen, 799 F.2d 1402 (9th Cir. 1986), the Ninth Circuit developed a threshold test to determine the credibility of a claimant's subjective symptom testimony. Under Cotton, a claimant "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (quoting Cotton, 799 F.2d at 1407-08); see also Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). Cotton requires "only that the causal relationship be a reasonable inference, not a medically proven phenomenon." Smolen, 80 F.3d at 1282. Therefore, a claimant is not required to produce objective medical evidence of the pain itself or its severity. Id. (citing Bunnell, 947 F.2d at 347-48).

Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be 'clear and convincing.'" Lester, 81 F.3d at 834 (quoting Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)); Smolen, 80 F.3d at 1281. In determining whether a

15

plaintiff's testimony concerning the severity of his or her symptoms is credible, the ALJ may properly consider: (1) ordinary techniques of credibility evaluation, such as the plaintiff's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the plaintiff that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the plaintiff's daily activities.  Id. at 1273.

Assuming that Plaintiff meets the Cotton threshold test, the ALJ has produced clear and convincing reasons for questioning Plaintiff's credibility.  Although the ALJ did not explicitly discuss the Smolen credibility factors, he noted that Plaintiff's reported daily activities, during the time she claimed to be disabled, were inconsistent with the alleged intensity, persistence and functionally limiting effects of her alleged symptoms.

For example, Plaintiff reported responding favorably to follow-up care. (Tr. 15.)  When Dr. Thuma started Plaintiff on Prozac, Plaintiff's mother said that it helped considerably. (Tr. 181.)  Plaintiff and her mother both testified that Xanax and Lexapro "work good for her."  (Tr. 69.)  Dr. Bouwmeister's nurse noted that, with increased medication, Plaintiff's "obsessing [was] better."  (Tr. 208-209.)  These statements indicate that Plaintiff's emotional state improved when taking her medication.

Plaintiff testified to having friends, socializing at clubs, playing pool, riding dirt bikes and working on her truck. (Tr. 15.)  Plaintiff also testified to working on a part-time basis and pursuing a GED. (Tr. 15.)  Finally, although Plaintiff testified

16

to experiencing panic attacks, she denied any having episodes when she was with her boyfriend. (Tr. 15.) These statements run counter to Plaintiff's allegation that the intensity and persistence of her condition prevents her from working.

Because the ALJ provided clear and convincing reasons for discounting the subjective complaints of Plaintiff, his determination on credibility was properly decided. <u>Lester</u>, 81 F.3d at 834.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted and Plaintiff's motions for summary judgment and remand are denied.

IT IS SO ORDERED.

Dated: 12/13/07

_____
CLAUDIA WILKEN
United States District Judge

17